IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMBER KAY, | ) | |
| | ) | Civil Action No.:_____ |
| Plaintiff, | ) | |
| v. | ) | Judge:_____ |
| | ) | |
| CATHOLIC CHARITIES | ) | Magistrate Judge:_____ |
| OF THE DIOCESE OF JOLIET, INC. | ) | |
| | ) | JURY TRIAL DEMANDED |
| Defendant. | ) | |

## COMPLAINT

NOW COMES the Plaintiff, AMBER KAY (hereinafter "Plaintiff" and/or "Kay"), by and through her undersigned Counsel of Record, and upon knowledge and belief as to all allegations of which she so possesses, and upon information and belief as to all other allegations, complains of Defendant CATHOLIC CHARITIES OF THE DIOCESE OF JOLIET, INC. (hereinafter "Defendant" and/or "CCDJ") as follows:

## NATURE OF THE CASE

Plaintiff brings this four (4) Count Complaint against Defendant seeking damages for Defendant's egregious disability discrimination, harassment, constructive discharge, failure to reasonably accommodate, and related illegal conduct constituting violations of the Americans with Disabilities Act of 1990, §2 *et seq.*, 42 U.S.C.A. §12101, *et seq.* ("ADA"), as well as Illinois state law.

1.     Plaintiff alleges that Defendant carried out a continuous, ongoing and egregious pattern of harassment towards Plaintiff due to her disability and violated the ADA through its policies and practices, including constantly refusing to even attempt to reasonably accommodate

1

her disability, accusing her of faking her disability to gain an advantage, and constructively discharging her due to her disability.

2.    Plaintiff is a qualified individual with a disability (profoundly deaf) that was unlawfully subjected to continuous, egregious, and shocking discrimination on the basis of her disability during her employment and unlawfully constructively discharged from her employment because of her disability and/or for her reporting of disability discrimination.

3.    Plaintiff was disabled and/or perceived as disabled by Defendant.

4.    Plaintiff's medical condition substantially impairs major life functions and activities.

5.    Plaintiff was an outstanding employee of Defendant that made substantial contributions to Defendant's operations, and during all relevant times performed her job responsibilities in a manner that met or exceeded Defendant's legitimate business expectations.

6.    Plaintiff suffered extreme emotional distress, lost wages, lost benefits, and other significant damages as a direct and proximate result of the Defendant's illegal conduct as alleged herein.

## JURISDICTION AND VENUE

7.    The subject matter jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332, 1343(3) and (4), 1658 and 2201 and 2202.  This is a suit authorized and instituted pursuant to the Act of Congress known as the Americans with Disabilities Act of 1990, §2 *et seq.*, 42 U.S.C.A. §12101 *et seq.*  Supplemental jurisdiction over Plaintiff's Illinois state law claim is conferred by 28 U.S.C §1367 (a).

8.    Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b) and (c).  Defendant resides and does business in the Northern District of Illinois and the Plaintiff

2

is a resident of the Northern District of Illinois. Defendant is subject to personal jurisdiction in the State of Illinois for the purposes of this lawsuit. All or a substantial part of the events or omissions giving rise to the claim occurred within this judicial district.

## PARTIES

**a.    Plaintiff:**

9.    Plaintiff is a resident of the City of Aurora, the County of Kane, and the State of Illinois.

10.    Plaintiff was employed by Defendant from approximately April 2005 through the date of her illegal constructive discharge on January 25, 2008.

**b.    Defendant:**

11.    Defendant is an Illinois Corporation doing business in the State of Illinois.

12.    Defendant is engaged in an industry affecting commerce and employs more than fifteen (15) employees and is an employer within the meaning the Americans with Disabilities Act.

## PROCEDURAL REQUIREMENTS

13.    Plaintiff fulfilled all conditions precedent to the institution of this action under the Americans with Disabilities Act.

14.    Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission on April 7, 2008, alleging violations of the Americans with Disabilities Act. *See April 7, 2008, Charge of Discrimination attached hereto as Exhibit "A."*

15.    The commission issued a "Notice of Right to Sue (Issued on Request)" dated February 3, 2009. *See February 3, 2009 Notice of Right to Sue, attached hereto as Exhibit "B."*

3

16.     Plaintiff has timely filed this lawsuit within ninety (90) days from the date of the February 3, 2009 Notice of Right to Sue. *See Exhibit "B."*

## FACTUAL ALLEGATIONS

17.     During all relevant times herein, Defendant was a covered entity as defined by 42 USC §12111(2) and an employer as defined by the 42 USC §12111(5)(a), with fifteen or more employees on each working day in each of 20 or more calendar weeks in the current or preceding year.

18.     During all relevant times herein, Plaintiff was an employee of Defendant as defined by the ADA.  Plaintiff was employed by Defendant in the position of Child Welfare Specialist.

19.     Plaintiff is a qualified individual with a disability as defined by 42 USC §12112(a).  Plaintiff is profoundly deaf.

20.     Plaintiff has been diagnosed as profoundly deaf since she was three years old.

21.     Plaintiff's disability is severe and permanent.

22.     Throughout Plaintiff's school history, Plaintiff was always provided with sign language interpreters and notetakers for all classes.

23.     All of Plaintiff's previous employers provided her with sign language interpreters, for training and meetings, as well as other reasonable accommodations.

24.     Plaintiff has a physical impairment, profound hearing loss, that substantially limits one or more major life activities, that are central to the life process itself, including but not limited to the major life activity of hearing.

25.     Plaintiff has a record of her physical impairment, has received medical treatment for her physical impairment, and is regarded as having a permanent physical impairment.

4

26.     Plaintiff has a Bachelor's Degree in Psychology from Purdue University.

27.     Plaintiff has approximately nine (9) years experience in social work, with approximately seven (7) years experience in Family related social work.

28.     At all relevant times herein, Plaintiff was a qualified, competent, and dedicated employee that contributed to Defendant in a substantial and meaningful manner.

29.     At all relevant times herein, Plaintiff was competent to perform, and was performing all of the essential functions of her position as Child Welfare Specialist in a manner that met and/or exceeded Defendant's legitimate business expectations.

30.     Defendant regarded Plaintiff as profoundly deaf and considered her disabled.

31.     Plaintiff fully advised the Defendant of the nature and scope of her medical condition, and her need for reasonable accommodation.  Defendant was fully aware of Plaintiff's disability at all relevant times.

32.     From the time that Plaintiff informed Defendant about her disability, and despite her numerous requests for reasonable accommodations, she was harassed and discriminated against because of her disability and/or retaliated against for her complaining/reporting of disability discrimination, including, but not limited to, the following:

     a.     Defendant continuously refused to provide any reasonable accommodation to Plaintiff for her disability, including, but not limited to:

          1.     Refusing to provide sign language interpreters or transcription for any meetings with employees or clients, or training;

          2.     Refusing to use a designated telephone relay service to contact Plaintiff by telephone; and

          3.     Refusing to allow Plaintiff to use her personal e-mail device to contact co-workers or supervisors, or otherwise conduct business.

b.    Defendant disciplined Plaintiff for missing meetings she was never given notice of;

c.    Defendant repeatedly attempted to have Plaintiff act as a sign language interpreter for hearing individuals due to her Deafness;

d.    Defendant employee Rose, with the approval of Plaintiff's supervisors, attempted to test Plaintiff's hearing through the use of a speakerphone to see if Plaintiff was faking her disability;

e.    Defendant employee and Plaintiff's direct supervisor Milita Martinez repeatedly harrassed and humiliated Plaintiff about needing an interpreter, including but not limited to:

1.    Making derogatory facial expressions and gestures in response to Plaintiff's use of and/or requests to use an interpreter;

2.    Publicly accusing Plaintiff of not needing an interpreter;

3.    Publicly accusing Plaintiff of "faking" the need for an interpreter in order to have a witness present in meeting; and

4.    Refusing Plaintiff the right to have the interpreter present in meetings even though the interpreter was present, available and had been compensated for her interpreting services.

f.    Kim Alderson openly and publicly harassed and humiliated Plaintiff in front of coworkers and other employees and encouraged and ratified a hostile and discriminatory work environment intended to embarrass, humiliate and otherwise deny Plaintiff reasonable and necessary accommodations.   For example, in January 2008, Ms. Alderson publicly accused Plaintiff of being able to hear and faking her disability;

g.    Plaintiff was subjected to heightened scrutiny regarding her job performance.   However, all similarly situated non-disabled/handicapped employees were subjected to far lower scrutiny regarding their own job performance;

h.    Defendant disciplined Plaintiff for things similarly situated non-disabled/handicapped employees were not disciplined for;

i.    Defendant disciplined Plaintiff more harshly than similarly situated non-disabled/handicapped employees;

6

j.      Defendant held Plaintiff to a higher performance standard than similarly situated non-disabled/handicapped employees;

k.      Defendant encouraged, permitted, and ratified continuous daily harassment, humiliation, and abuse of Plaintiff by her direct supervisor and coworkers, because of and about her permanent disability;

l.      Defendant would not properly train Plaintiff for her position, but did properly train other similarly situated non-disabled/handicapped employees;

m.      Defendant required Plaintiff to check in and keep Defendant apprised of her location, but did not require the same of similarly situated non-disabled/handicapped employees;

n.      Defendant required Plaintiff to keep her door open while working, but did not require the same of similarly situated non-disabled/handicapped employees;

o.      Defendant required Plaintiff to work at both the Lombard and Joliet office, but allowed all other similarly situated non-disabled/handicapped employees to only work at one office;

p.      Defendant repeatedly denied Plaintiff's request of a reasonable accommodation of a sign language interpreter, and even on the few occasions that an interpreter was hired and present, Defendant would openly harass and humiliated Plaintiff about the use of an interpreter or deny her the right to use the interpreter all together;

q.      Defendant repeatedly denied Plaintiff's request of a reasonable accommodation of having other employees take notes for her at meetings;

r.      Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiff's disability/handicap;

s.      Defendant constructively discharged Plaintiff because of her disability/handicap;

t.      Defendant replaced Plaintiff with a non-disabled/handicapped individual; and

u.      Defendant otherwise treated Plaintiff differently than similarly situated non-disabled/non-handicapped employees in the terms, conditions, and responsibilities of her employment.

7

33.    The disability discrimination and harassment was so severe and pervasive as to alter the conditions of Plaintiff's employment and create an abusive and hostile working environment.

34.    Defendant utterly failed to, despite knowledge of Plaintiff's disability, engage in any evaluation, discussion, or the mandatory interactive process with Plaintiff to identify and implement appropriate reasonable accommodations.

35.    Defendant refused to consider, evaluate, discuss, investigate, engage in, assess, and/or otherwise attempt to accommodate or determine whether it could accommodate Plaintiff's disability and/or requests for accommodation.

36.    Plaintiff requested the following appropriate and reasonable accommodations, all of which could have been provided by Defendant:

    a.    Use of a Sign Language Interpreter;

    b.    Use of e-mail to communicate with coworkers and supervisors, as opposed to telephone use;

    c.    Use of a telephone relay service to communicate with coworkers and supervisors; and

    d.    Use of transcription at meetings with coworkers and staff.

37.    Defendant refused to make appropriate and reasonable accommodations and further harassed and humiliated Plaintiff in response to Plaintiff's request for such accommodations.  Defendant's refusal to make any appropriate and reasonable accommodation included, but was not limited to, the following:

a.    On no less than sixty-five (65) separate occasions, including team meetings, client meetings, and trainings, Defendant failed to provide a sign language interpreter for Plaintiff;

b.    On no less than sixty-five (65) separate occasions, including team meetings, client meetings, and trainings, Defendant failed to provide any type of transcription service for Plaintiff;

c.    Defendant's employees continuously refused to use the telephone relay service to attempt to call Plaintiff;

d.    Defendant barred Plaintiff from using her personal e-mail device to communicate with co-workers and staff; and

e.    Defendant employees engaged in continuous shocking and offensive comments, gestures, and derogatory conduct directed at Plaintiff's disability and intended to humiliate and embarrass Plaintiff.

38.    Plaintiff complained about the disability-based discrimination and harassment, both orally and in writing.

39.    Defendant was fully aware of the nature and scope of the disability-based discrimination and harassment.   However, Defendant took no action to stop, remediate, investigate or otherwise address the discrimination/harassment.

40.    On January 25, 2008, Defendant constructively discharged Plaintiff in violation of the ADA.

41.    There was no legitimate non-discriminatory/non-retaliatory basis for Plaintiff's constructive discharge.

42.     Defendant unlawfully terminated Plaintiff from her employment because of her disability (profoundly deaf) and/or in retaliation for her complaints/reports regarding disability discrimination.

43.     Plaintiff had an outstanding work history and was never subjected to disciplinary action.  Plaintiff was an excellent, qualified, and dedicated employee. At all relevant times herein, Plaintiff could perform all of the essential functions of her job and job responsibilities/duties with or without reasonable accommodation.

44.     Defendant replaced Plaintiff with a non-disabled individual.

45.     Plaintiff has suffered severe damages as a direct and proximate result of Defendant's unlawful conduct as described herein, including, but not limited to, the following: loss of employment, loss of benefits, emotional distress, humiliation, degradation, and other damages.

46.     All allegations and claims are pled in the alternative, to the extent such an interpretation is necessitated by law, required for proper construction under the law and permitted under federal law.

## COUNT I

### DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE ADA
### (42 U.S.C.A. § 12101, *et. Seg*)

47.     Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

48.     All conditions precedent to Count I have been satisfied.

49.     Plaintiff is a qualified individual with a disability.

10

50.    The ADA makes it unlawful to discriminate in the terms, conditions, responsibilities, and/or privileges of employment against a qualified individual with a disability. The ADA further makes it illegal to take an adverse employment action against a qualified individual with a disability because of her disability.

51.    As alleged herein, Defendant subjected Plaintiff to ongoing and continuous disability discrimination in the terms, conditions, responsibilities and/or privileges of her employment.

52.    Defendant's conduct constitutes unlawful disability discrimination in violation of the ADA.

53.    Plaintiff repeatedly requested reasonable accommodations for her disability.

54.    Defendant refused to consider, evaluate, discuss, investigate, assess and/or otherwise attempt to engage in an interactive process to determine whether it could accommodate Plaintiff's disability and/or requests for accommodation.

55.    Defendant's failure to engage in an interactive process with Plaintiff and its failure to make appropriate and reasonable accommodations violate the ADA.

56.    On January 25, 2008, Defendant constructively discharged Plaintiff from her employment, in whole, or in part because of her disability.

57.    Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

58.    Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

11

59.     Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

## COUNT II

### RETALIATION IN VIOLATION OF THE ADA
### (42 U.S.C.A. § 12101, *et. Seg*)

60.     Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

61.     All conditions precedent to Count II have been satisfied.

62.     Plaintiff is a qualified individual with a disability.

63.     The ADA makes it unlawful to retaliate against any individual because such individual has opposed any act or practice made unlawful under the ADA.

64.     From the commencement of her employment through the date of her unlawful constructive discharge, Plaintiff repeatedly requested a reasonable accommodation for her disability.   The requested reasonable accommodation included, but was not limited to, the following:

        a.      Use of a Sign Language Interpreter;

        b.      Use of e-mail to communicate with coworkers and supervisors, as opposed to telephone use;

        c.      Use of a telephone relay service to communicate with coworkers and supervisors; and

        d.      Use of transcription at meetings with coworkers and staff.

12

65.    Throughout Plaintiff's employment with Defendant, Defendant refused to grant Plaintiff's requests for a reasonable accommodation for her disability.

66.    Plaintiff made repeated complaints/reports to Defendant regarding Defendant's refusal to grant Plaintiff's requests for a reasonable accommodation for her disability. Plaintiff's complaints/reports included, but were not limited to, the following:

a.    In March 2006, Plaintiff made repeated complaints via e-mail to her supervisor, Kim Alderson;

b.    In May 2006, Plaintiff complained about harassment via e-mail to HR;

c.    In June 2006, Plaintiff complained about harassment via e-mail to HR;

d.    In August 2006, Plaintiff complained about Defendant's failure to reasonably accommodate her disability via e-mail to HR;

e.    In February 2007, Plaintiff complained about harassment and Defendant's failure to reasonably accommodate her disability via e-mail to HR;

f.    In March 2007, Plaintiff complained about harassment and Defendant's failure to reasonably accommodate her disability in person to her supervisor, Joberta Johnson;

g.    In May 2007, Plaintiff complained verbally and in writing to her direct supervisor, Milita Martinez;

h.    In December 2007, Plaintiff complained about harassment and Defendant's failure to reasonably accommodate her disability verbally to her supervisor, Joberta Johnson; and

i.    In January 2008, Plaintiff complained about the harassment and Defendant's failure to reasonably accommodate her disability verbally to her supervisor, Joberta Johnson.

13

67.     On January 25, 2008, Defendant constructively discharged Plaintiff from her employment, in whole, or in part in retaliation for her requests for reasonable accommodation of her disability, and/or due to her complaints/reports of disability discrimination and Defendant's failure to accommodate her disability.

68.     There was no legitimate non-discriminatory/non-retaliatory reason for any of the alleged discriminatory acts and/or retaliatory constructive discharge of Plaintiff.

69.     Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

70.     Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

71.     Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

<u>**COUNT III**</u>

**HOSTILE WORK ENVIRONMENT IN VIOLATION
OF THE ADA
(<u>42 U.S.C.A. § 12101, *et. Seg*</u>)**

72.     Plaintiff re-alleges and restates all preceding paragraphs of this Complaint as if fully set forth herein.

73.     All conditions precedent to Count III have been satisfied.

74.     The ADA makes it unlawful to allow a workplace permeated with insult, ridicule, and intimidation, based on an employee's disability.

14

75.     From the date that Plaintiff began to work for Defendant, Defendant began to harass and humiliate Plaintiff based on her disability. The harassment and humiliation included, but was not limited to, the following:

a.      Defendant continuously refused to provide any reasonable accommodation to Plaintiff for her disability, including, but not limited to:

1.      Refusing to provide sign language interpreters or transcription for any meetings with employees or clients, or training;

2.      Refusing to use a designated telephone relay service to contact Plaintiff by telephone; and

3.      Refusing to allow Plaintiff to use her personal e-mail device to contact co-workers or supervisors, or otherwise conduct business.

b.      Defendant disciplined Plaintiff for missing meetings she was never given notice of;

c.      Defendant repeatedly attempted to have Plaintiff act as a sign language interpreter for hearing individuals due to her Deafness;

d.      Defendant employee Rose, with the approval of Plaintiff's supervisors, attempted to test Plaintiff's hearing through the use of a speakerphone to see if Plaintiff was faking her disability;

e.      Defendant employee and Plaintiff's direct supervisor Milita Martinez repeatedly harassed and humiliated Plaintiff about needing an interpreter, including but not limited to:

1.      Making derogatory facial expressions and gestures in response to Plaintiff's use of and/or requests to use an interpreter;

2.      Publicly accusing Plaintiff of not needing an interpreter;

3.      Publicly accusing Plaintiff of "faking" the need for an interpreter in order to have a witness present in meeting;

4.      Refusing Plaintiff the right to have the interpreter present in meetings even though the interpreter was present, available and had been compensated for her interpreting services.

15

f. Kim Alderson openly and publicly harassed and humiliated Plaintiff in front of coworkers and other employees and encouraged and ratified a hostile and discriminatory work environment intended to embarrass, humiliate and otherwise deny Plaintiff reasonable and necessary accommodations. For example, in January, 2008, Ms. Alderson publicly accused Plaintiff of being able to hear;

g. Plaintiff was subjected to heightened scrutiny regarding her job performance. However, all similarly situated non-disabled/handicapped employees were subjected to far lower scrutiny regarding their own job performance;

h. Defendant disciplined Plaintiff for things similarly situated non-disabled/handicapped employees were not disciplined for;

i. Defendant disciplined Plaintiff more harshly than similarly situated non-disabled/handicapped employees;

j. Defendant held Plaintiff to a higher performance standard than similarly situated non-disabled/handicapped employees;

k. Defendant encouraged, permitted, and ratified continuous daily harassment, humiliation, and abuse of Plaintiff by her direct supervisor and coworkers, because of and about her permanent disability;

l. Defendant would not properly train Plaintiff for her position, but did properly train other similarly situated non-disabled/handicapped employees;

m. Defendant required Plaintiff to check in and keep Defendant apprised of her location, but did not require the same of similarly situated non-disabled/handicapped employees;

n. Defendant required Plaintiff to keep her door open while working, but did not require the same of similarly situated non-disabled/handicapped employees;

o. Defendant required Plaintiff to work at both the Lombard and Joliet office, but allowed all other similarly situated non-disabled/handicapped employees to only work at one office;

p. Defendant repeatedly denied Plaintiff's request of a reasonable accommodation of a sign language interpreter, and even on the few occasions that an interpreter was hired and present, Defendant would

16

openly harass and humiliated Plaintiff about the use of an interpreter or deny her the right to use the interpreter all together;

q.   Defendant repeatedly denied Plaintiff's request of a reasonable accommodation of having other employees take notes for her at meetings;

r.   Defendant refused to engage in an "interactive process" to determine if reasonable accommodation could be made for Plaintiff's disability/handicap;

s.   Defendant constructively discharged Plaintiff because of her disability/handicap;

t.   Defendant replaced Plaintiff with a non-disabled/handicapped individual; and

u.   Defendant otherwise treated Plaintiff differently than similarly situated non-disabled/non-handicapped employees in the terms, conditions, and responsibilities of her employment.

76.   Defendant's above-stated actions were willful, malicious, in bad faith, outrageous, and extraordinary.

77.   Defendant engaged in the herein alleged willfully and malicious violations of the law knowingly and intending to violate federal law.

78.   Defendant's conduct, in violation of the ADA, was the direct and proximate cause of Plaintiff incurring severe damages including, but not limited to, loss of employment, lost wages, lost benefits and severe emotional distress.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

79.   Plaintiff realleges and incorporates by reference all preceding paragraphs, as if fully set forth herein.

80.   All conditions precedent to Count IV have been satisfied.

81.   Plaintiff was an employee of Defendant.

82.     Plaintiff fulfilled her job duties with skill and expertise.

83.     Defendant's severe and outrageous acts, including, but not limited to, continuously harassing Plaintiff about her disability, publicly accusing her faking her disability, having employees test her to see if she was faking her disability, refusing to reasonably accommodate her disability, refusing to train Plaintiff, treating Plaintiff differently than non-profoundly deaf employees, and constructively discharging Plaintiff due to her disability and/or her requests for reasonable accommodation for her disability were actions that amounted to extreme and outrageous conduct.

84.     Defendant's acts were perpetrated with the intent to cause the Plaintiff severe emotional distress.

85.     Defendant's acts were perpetrated with such recklessness as to cause the Plaintiff severe emotional distress.

86.     Plaintiff did, in fact, experience extreme emotional distress.

87.     By the extreme emotional distress the Plaintiff was thereby damaged.

88.     Defendant's acts, actions and inaction directly and proximately caused the Plaintiff's severe emotional distress.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

i.      Damages sufficient to compensate Plaintiff for her injuries;

ii.     Reinstatement or Front Pay;

iii.    Back Pay, inclusive of lost wages and any benefits;

iv.     Pre-judgment and post-judgment interest;

v.      Reasonable attorney's fees;

vi.     Costs of this action;

18

vii.     Emotional Distress Damages;

viii.    Punitive damages; and,

ix.      Any and all other relief that this Honorable Court may deem just and

equitable.

### **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands

a trial by jury on all questions of fact raised by the complaint.

Dated: April 24, 2009                    Respectfully submitted,

                                         FOOTE, MEYERS, MIELKE & FLOWERS, LLC

                                         /s/Robert M. Foote
                                         Robert M. Foote, Esq. (#03124325)
                                         Matthew J. Herman, Esq. (#06237297)
                                         Stephen W. Fung, Esq. (#06289522)
                                         28 North First Street
                                         Suite 2
                                         Geneva, Illinois 60134
                                         Telephone: (630) 232-6333
                                         Facsimile: (630) 845-8982

                                         Kathleen C. Chavez (#06255735)
                                         Chavez Law Firm, P.C.
                                         28 North First Street
                                         Suite 2
                                         Geneva, Illinois 60134
                                         Telephone: (630)232-4480
                                         Facsimile: (630) 845-8982

                                         Peter L. Currie, Esq. (#06281711)
                                         The Law Firm of Peter L. Currie, P.C.
                                         536 Wing Street
                                         St. Charles, Illinois 60174
                                         Telephone: (630) 862-1130
                                         Facsimile: (630) 845-8982

                                         *Attorneys for Plaintiff*